U.S. IMAGING, INC. d/b/a Sadi Pain
Management and Berney R.
Keszler, M.D., Appellants,

v.

Craig GARDNER and Thelma
Gardner, Appellees.

No. 04–07–00340–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 28, 2007.

Rehearing Overruled Feb. 28, 2008.

tion 74.351 of the Texas Practice and Remedies Code.[1] The trial court overruled the objections and denied the motions to dismiss and this appeal ensued. We reverse the trial court's order and remand this matter to the trial court for entry of a dismissal with prejudice regarding the Gardners' claims against SADI and Keszler.

Stephanie S. Bascon, Rebecca A. Copeland, Reagan Burrus Dierksen Lamon & Bluntzer, P.L.L.C., New Braunfels, TX, L. Cullen Moore, Debra Ibarra Mayfield, Nathan M. Rymer, Rymer, Moore, Jackson & Echols, P.C., Houston, TX, for Appellant.

William M. Nichols, William M. Nichols, P.C., San Antonio, TX, Elizabeth Higginbotham, Liddell, Sapp, Zivley, Hill & Laboon, L.L.P., Austin, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice Rebecca, SIMMONS, Justice.

## MEMORANDUM OPINION

Opinion by REBECCA SIMMONS, Justice.

This case stems from a medical malpractice suit wherein Craig and Thelma Gardner (jointly "the Gardners") filed suit alleging that U.S. Imaging, Inc. d/b/a SADI Pain Management ("SADI") and Dr. Berney Keszler breached the standard of care regarding a lumbar epidural procedure performed on Mr. Gardner. SADI and Keszler filed objections to the expert report and motions to dismiss based on an inadequate expert report pursuant to Sec-

## FACTUAL BACKGROUND

Craig Gardner complained to Dr. Keszler of lower back pain. On July 7, 2004, Keszler allegedly performed a percutaneous fibrinolysis, neurolysis and nonspecific nerve root decompression and epiduolysis of adhesions (a lower epidural procedure). On August 24, 2006, the Gardners filed a health care liability suit claiming: (1) Keszler's performance of the epidural procedure was not adequately described in the medical records; (2) the procedure resulted in spinal meningitis, a recognized risk associated with epidural procedures; (3) Keszler performed a procedure that had no medical indication; and (4) the procedure was not performed in accordance with protocols for the stated procedure and for which procedure, Mr. Gardner had not given consent.

In accordance with Section 74.351 of the Texas Civil Practice and Remedies Code, the Gardners proffered an expert report prepared by Dr. Edson Parker. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon 2006). SADI and Keszler filed objections to the expert report and a motion to dismiss under Section 74.351. *Id.* The Gardners did not file a written response to either the objections or the motions to dismiss. The trial court conducted a hear-

---

1. SADI also filed a motion to dismiss claiming no expert report had been served on it within the statutory deadline. Because we hold the expert report inadequate, we do not reach this issue.

ing on April 19, 2007 and denied the motions to dismiss.

## STANDARD OF REVIEW

An appellate court reviews the denial of a motion to dismiss filed pursuant to Section 74.351 under an abuse of discretion standard. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). Accordingly, this court must determine whether the trial court acted arbitrarily and without reference to any guiding rules or principles. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003).

A plaintiff asserting a health care liability claim must timely provide each defendant health care provider with an expert report. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). The statute defines "expert report" as follows:

a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). If a plaintiff timely furnishes the required report, the defendant may file a motion challenging the report's adequacy. *See id.* § 74.351(*l*).

## INADEQUACY OF THE REPORT

■ When considering a Section 74.351 motion to dismiss, the issue for the trial court is whether the plaintiff's expert report constitutes a "good-faith effort" to comply with Section 74.351. *See* TEX. PRAC. & REM.CODE. ANN. § 74.351(*l*) (providing the trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)."). To constitute a good-faith

effort, the report must (1) inform the defendant of the specific conduct called into question by the plaintiff's claims and (2) provide a basis from which the trial court may conclude the claims have merit. *Palacios,* 46 S.W.3d at 879.

■ We first address appellants' claims that the report fails to provide the necessary causal relationship between Keszler's acts or omissions and Mr. Gardner's injury. We note there are no "magical words" required to establish the necessary causal link. *See Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002).

In his report, Parker concludes:

It is my medical opinion, to a reasonable degree of medical certainty, that the persistent profound sensorineural hearing loss Mr. Gardner currently suffers, as diagnosed by Dr. Robert Spears, following the lumbar epidural procedure performed by Dr. Keszler on 7/1/04, with subsequent meningitis, is directly related to that procedure, a procedure which had no medical indication for its performance, was not performed in accordance with protocols for the stated procedure and for which Mr. Gardner did not give his informed consent, specifically with respect to the risk of meningitis.

■ Although an expert report need not marshal all of the plaintiff's proof, it must include the expert's opinion on the standard of care, breach, and causal relationship and may not merely state conclusions about the required elements of each. *Id.* at 52 citing *Am. Trans. Care Cntr. of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex.2001). Section 74.351 requires an expert to explain the basis of his opinions and link his conclusions to the facts. *Id.* A court looks no further than the four corners of the document. *Id.* at 53; TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*), (r)(6). This requirement precludes a court from

filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *Bowie Mem'l Hosp.,* 79 S.W.3d at 53.

Parker faults Keszler for performing an unnecessary surgery, not fully informing Mr. Gardner of the inherent risks, and of not performing the surgical procedure described in his surgical notes. Although Parker concludes that Mr. Gardner's injuries are "directly related" to the epidural procedure, he fails to explain how Keszler's procedure caused Mr. Gardner's hearing loss or the Gardners' alleged damages in general. Accordingly, Parker's report does not establish a causal link between the alleged breach from the standard of care, if any, and Mr. Gardner's injury. *See* § 74.351(r)(6).

This case is distinguishable from cases like *Gallardo v. Ugarte,* 145 S.W.3d 272 (Tex.App.-El Paso 2004, pet. denied). In *Ugarte,* the twenty-eight page expert report explained that the doctor failed to accurately assess and diagnose the patient and, further, failed to explain his actions in his notes, and opined that it was these failures that caused the death of the patient. *Id.* at 279. The court held the report represented a good-faith effort to provide a fair summary of the expert's opinions as to causation because it indicated that if the proper steps had been taken, the injury could have been prevented from occurring or progressing. *Id.* at 280. Our case is inapposite.

Here, Parker simply states the meningitis and hearing loss are "directly related to [the lumbar epidural] procedure." He fails, however, to provide any basis for this opinion. Absent in his report is any discussion or authority that the epidural procedure in question caused Mr. Gardner's meningitis or that the meningitis caused his hearing loss. Unlike *Ugarte,* Parker fails to identify how the epidural procedure was the cause of the injuries or more specifically, how Keszler's negligence, if any, caused Mr. Gardner's injuries. Parker's report offers only conclusory comments related to causation. Because we cannot infer causation, the report is inadequate and the trial court should have dismissed the cause of action under Section 74.351. Because this determination is dispositive of this appeal, we need not address the remaining issues.

### CONCLUSION

Because Parker's report fails to provide the necessary causal link between any negligence by Keszler and the resulting meningitis or resulting hearing loss, the report is inadequate and the trial court should have granted SADI's and Keszler's motions to dismiss. We, therefore, reverse the trial court's order and remand the cause to the trial court for a determination of reasonable attorney's fees and costs of court and to enter a judgment dismissing the Gardners' claims against Appellants U.S. Imaging, Inc. d/b/a SADI Pain Management and Dr. Berney Keszler with prejudice.