Court Of Appeals
Fourth Court of Appeals District of Texas



★ ★ ★                    ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00402-CV

**REGENT CARE CENTER OF OAKWELL FARMS** a/k/a Regent Care Center of San
Antonio II Limited Partnership d/b/a Regent Care Center of Oakwell Farms, Regent Care Center
of San Antonio II, Limited Partners, Regent Care General Partner, Inc., Regent Care Operations
General Partner, Inc., and Regent Care Center of San Antonio,
Appellants

v.

Dianne **CRAIG**, Andy Sichi, and Jean Brannum,
Appellees

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-20152
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Sandee Bryan Marion, Justice

Delivered and Filed: December 9, 2009

AFFIRMED

    Regent Care Center of Oakwell Farms a/k/a Regent Care Center of San Antonio II Limited

Partnership d/b/a Regent Care Center of Oakwell Farms, Regent Care Center of San Antonio II,

Limited Partners, Regent Care General Partner, Inc., Regent Care Operations General Partner, Inc.,

and Regent Care Center of San Antonio ("Regent Care") appeal the trial court's order denying their motion to dismiss the underlying cause for failure to timely serve an expert report under section 74.351 of the Texas Civil Practice and Remedies Code ("Code"). Regent Care presents four issues on appeal asserting the trial court abused its discretion in: (1) failing to dismiss the cause as to certain defendants not mentioned in the expert report; (2) considering the report of a nurse whose *curriculum vitae* was not timely served; (3) considering causation opinions of nurses; and (4) finding a physician's report containing an analytical gap to be adequate. We affirm the trial court's order.

## BACKGROUND

Dianne Craig, a temporary resident at Regent Care Center of San Antonio II, Limited Partnership d/b/a Regent Care Center of Oakwell Farms, was found on the floor of her room at 4:00 a.m., unattended, with injuries to her eyes and face. Craig was transferred to a hospital for emergency treatment and surgery. Craig, her husband, and her daughter (collectively referred to as "Craig") subsequently sued Regent Care for negligent care.

In an effort to comply with section 74.351 of the Code, Craig served Regent Care with expert reports from two nurses and one physician. Regent Care filed a motion challenging the timeliness and adequacy of the reports, which the trial court denied.

## STANDARD OF REVIEW

We review a trial court's decision on a motion to dismiss for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *U. S. Imaging, Inc. v. Gardner*, 274 S.W.3d 693, 695 (Tex. App.—San Antonio 2007), *rev'd on other grounds*, 274 S.W.3d 669 (Tex. 2008). A trial court abuses its discretion if it acts in an arbitrary or unreasonable

manner or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

## DISCUSSION

In its first issue, Regent Care complains that the trial court abused its discretion in denying its motion to dismiss as to three defendants who were not mentioned in the expert reports. At the hearing on Regent Care's motion, however, the attorneys for both Regent Care and Craig informed the trial court that a Rule 11 agreement was signed by both attorneys pursuant to which Craig agreed to amend her pleadings to remove the three defendants in question, and Regent Care agreed to forego the statutory motion to dismiss regarding those entities. Accordingly, the trial court did not abuse its discretion in denying the motion to dismiss the three defendants since Regent Care agreed to forego the motion as to those defendants.

In its second issue, Regent Care complains that the trial court abused its discretion in considering a report provided by Patsy Henry, R.N. because her *curriculum vitae* was not timely served. At the hearing on Regent Care's motion, Craig's attorney responded to Regent Care's assertion that Nurse Henry's *curriculum vitae* was not timely served by asserting:

> MR. BRAIN [Craig's attorney]: On the issue of the fax that was sent, if I could present to the court – I have evidence here. I have a record showing that the faxes were sent and received. I'd offer my own statement in the way of – as an officer of the court that I repeatedly tried faxing the resume of Ms. Henry and succeeded on March 30th at 3:44 in the afternoon, and the record from my send log indicates it was completed, and an additional two pages were sent ten minutes later all about Nurse Henry's qualifications. I talked to Ms. Comerio about this. I suggested that she talk to her staff and get back to me, but until yesterday I thought this was a nonissue.

The trial court did not abuse its discretion in finding that the *curriculum vitae* of Nurse Henry was timely served by facsimile transmission. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997)

(attorney's unsworn statements considered evidence where other party fails to object). Moreover, Regent Care does not challenge the adequacy of the expert report submitted by another nurse, Mildred A. Toth, M.S., R.N., A.O.C.N., who also addressed the applicable standard of care.

In its third issue, Regent Care assets the trial court abused its discretion by considering the causation opinions of Nurse Henry and Nurse Toth contrary to section 74.403(a) of the Code which requires a physician to opine on causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (Vernon 2005). Nothing contained in the record, however, supports Regent Care's assertion that the trial court considered the nurses' causation opinions. Instead, the record contains an expert report of a physician which the trial court could properly have considered in finding the reports adequate with regard to causation. *See id.*

In its fourth issue, Regent Care contends that the expert report of Dr. William Garrett contained an analytical gap between the standard of care and causation. Regent Care further contends that Dr. Garrett's report is internally inconsistent, speculative, and conclusory.

When considering a motion to dismiss under section 74.351, the issue for the trial court is whether the plaintiff's expert report constitutes a "good-faith effort" to comply with section 74.351. *U. S. Imaging, Inc.*, 274 S.W.3d at 695. To constitute a good-faith effort, the report must: (1) inform the defendant of the specific conduct called into question by the plaintiff's claims; and (2) provide a basis from which the trial court may conclude the claims have merit. *Id.* Although an expert report need not marshal all of the plaintiff's proof, it must explain the basis for the expert's opinion. *Id.* The opinion may not merely state conclusions regarding causation, but must link the conclusions to the facts. *Id.* A court looks no further than the four corners of the document. *Id.*

This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *Id*. at 695-96.

Both Nurse Toth and Nurse Henry stated that the applicable standard of care required Regent Care to assess Craig for the risk of fall and to implement fall precautions. Given Craig's history and the medications she was taking, she was in danger of falling. Moreover, the medical records revealed that Regent Care failed to implement fall precautions in accordance with Regent Care's protocols or even as ordered by Craig's physician. These fall precautions would have included a low bed, fall mats, and a bed alarm that would have alerted Regent Care staff when Craig was moving or trying to exit her bed.

Dr. Garrett initially notes in his report that the precise mechanism of Craig's injury was unclear due to Regent Care's "inadequate and substandard documentation" regarding the circumstances of Craig's fall and the assessment of her condition between the time she was discovered on the floor and the time she was transported to a hospital almost an hour and a half later. Dr. Garrett states that Regent Care's report contained little or no documentation of where Craig "was found in the room in relation to her bed, whether she was found on a mat, whether there was blood on any objects in the room," "whether bed rails were in place, whether any nurse had attended to her in the past few hours, or any other activity in relation to the patient that might shed light on her injury and the mechanism of injury." Dr. Garrett further states that Regent Care's records contained no documentation of what questions were asked when Craig was discovered on the floor or what her answers were, despite records showing that Craig was responsive and answered questions that were asked.

With regard to causation, Dr. Garrett opines that the most likely explanation for Craig's injuries "is that [Craig] did not have the fall precautions such as low bed and bedside mats that were ordered by the physician and that are not documented as having been implemented in the Regent Care chart." Because of Regent Care's inadequate reporting, Dr. Garrett mentions the possibility that Craig could have been hit in the eye by another resident or staff member. Dr. Garrett then discounts this possibility, stating an attack by another patient or staff member "seem[ed] unlikely, mainly because one would expect to see some report of criminal conduct by the facility if that happened, especially since [Craig was] described as able to answer questions on being found in an injured state." Dr. Garrett also mentions the possibility that Craig could have been left unattended during "toileting" because the patient history in the hospitals' records where Craig was taken for emergency treatment contain "several notations of the patient having been taken to the bathroom or trying to make it to the bathroom in association with the circumstances of her injury." Regent Care emphasizes this statement by Dr. Garrett, asserting that the report does not contain any discussion of the standard of care relating to "toileting." However, Dr. Garrett further states in his report that if the proper fall precautions had been implemented, injury also could have been avoided if these were the actual circumstances preceding Craig's fall. Again, Dr. Garrett mentioned these possibilities only due to Regent Care's inadequate reporting. At the end of his report, Dr. Garrett returns to the most likely explanation of the cause of Craig's injury – the absence of the fall precautions – and summarizes his opinion with regard to causation as follows:

3. **Causal connection between failure to follow Standards of Care and Injury to the Patient** – As explained in detail above, the patient sustained a severe injury to her left eye that was discovered in the early morning hours of September 28, 2006 at Regent Care. Because she was found on her right side with a laceration and hematoma on the right side, it is probable that she

struck or was struck in a fall or other traumatic event first on her left side in the left eye, where the more severe injury was sustained, and then fell to the floor on her right side. The patient was taken to the emergency departments of two hospitals and found to have a ruptured globe in the left eye, a severe injury requiring emergency surgery and has suffered impairment of her sight in her left eye that was obviously caused by the traumatic event at Regent Care. Had the appropriate fall precautions of the facility's Protocol II, or even the limited ones ordered by Dr. Roger, been implemented on this patient, it is highly unlikely if not impossible that she could have been in a vulnerable position in the middle of the night such that she could either arise by herself and fall unattended in her room or elsewhere and sustain the kind of injury to her left eye that she was found to have on September 28, 2006, or be otherwise unattended such that she could suffer a traumatic event such as the one that caused these injuries. There is no adequate assessment in Regent Care records of the cause of the injuries, and no information on what the patient said in answering questions that would have been related to that issue in these circumstances after she was found to have been injured.

In view of the foregoing, we conclude the trial court did not abuse its discretion in finding that Dr. Garrett's report constituted a "good-faith effort" to comply with section 74.351 with regard to the element of causation. Dr. Garrett causally linked the failure to implement fall precautions with Craig's subsequent fall and injury.

## CONCLUSION

The trial court's order is affirmed.

Catherine Stone, Chief Justice