COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



TENET HOSPITALS LIMITED d/b/a     §
SIERRA MEDICAL CENTER,                          No. 08-14-00181-CV

                  §

          Appellant,                          Appeal from the

                  §

v.                                        120th Judicial District Court

                  §

SANDRA BERNAL, Individually and as           of El Paso County, Texas
Independent Administrator of the Estate of    §
Margarita G. Medrano, Deceased,                 (TC#2013DCV3968)
CAROLINA HERNANDEZ, CARLOS M.    §
MEDRANO, MARIA MAGDALENA
ALEXUS, RAUL MEDRANO AND           §
MARIA V. TELLEZ,

                  §

          Appellees.

# **O P I N I O N**

This case involves a health care liability claim subject to the Texas Medical Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001-.507. Sandra Bernal and the other plaintiffs sued Tenet Hospitals Limited d/b/a Sierra Medical Center (Tenet) and others over the death of Margarita Medrano. The trial court denied Tenet's challenge to the preliminary expert reports served by the plaintiffs. The issue in this interlocutory appeal is the adequacy of those expert reports. We reverse and remand.

# BACKGROUND[1]

On August 26, 2011, Dr. Hector Flores performed surgery at Sierra Medical Center to repair the mitral valve in Margarita Medrano's heart. During the course of the procedure, a Swan-Ganz catheter was placed in Medrano's left subclavian vein.

Two days later, two Tenet nurses unsuccessfully and repeatedly pulled on the catheter in an attempt to remove it from Medrano. Medrano's daughter observed Medrano screaming in pain during the attempts. Dr. Flores subsequently examined Medrano and also unsuccessfully attempted to remove the catheter. After Medrano underwent imaging, Dr. Flores determined that another surgery was necessary for the controlled removal of the catheter.

The next day, August 29, Dr. Flores performed surgery to remove the catheter, which, it was discovered, had been inadvertently sutured in place during the first surgery. Plaintiffs allege that during the second surgery, the anesthesiologist, Dr. James B. Boone, prematurely pulled on the stitched catheter and tore Medrano's heart, which when coupled with the ensuing negligence of Dr. Flores in reaction to the crisis, resulted in hemorrhage and multi-organ failure, leaving Medrano in critical condition.

On September 1, Dr. Robert Santoscoy performed a third surgery on Medrano to repair her torn superior vena cava. The surgery was deemed "technically successful." However, Medrano died two and one-half months' later, allegedly due to complications arising from the August 29 surgery.

Plaintiffs brought both wrongful death and survival claims arising from Medrano's death. Plaintiffs sued Dr. Flores, Dr. Santoscoy, and Tenet, but not the anesthesiologist, Dr. Boone.

---

[1] We take this background information from the petition and the expert reports in issue, noting that the factual claims have not yet been proven.

2

Plaintiffs alleged that Tenet was vicariously liable for the negligence of Dr. Boone under the theory of ostensible agency and vicariously liable for the negligence of its nurses under the doctrine of respondeat superior.

As required by Chapter 74 of the Texas Civil Practices and Remedies Code, plaintiffs served the expert reports of: (1) Dr. Thomas Jay Berger, who addressed the wrongful death claims arising from the alleged negligence of Dr. Flores and the anesthesiologist Dr. Boone; and (2) Nurse Elisabeth Ridgely, who addressed the survival claims for Medrano's pain arising from the actions of the Tenet nurses in their attempted removal of the Swan-Ganz catheter. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (b) (West Supp. 2015). Tenet objected to the expert reports and sought the dismissal of plaintiffs' claims against it. Tenet contended in part that Nurse Ridgely's report could not support plaintiffs' survival claims because she could not opine as to causation. Tenet contended in part that Dr. Berger's report could not support plaintiffs' wrongful death claims because his report did not mention the hospital or implicate its behavior. The trial court denied Tenet's motion to dismiss.[2]

## DISCUSSION

### TMLA Requirements for Expert Reports

A plaintiff asserting a health care liability claim must serve an expert report "for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). A valid expert report under the TMLA must provide: (1) a fair summary of the applicable standards of care; (2) the manner in which the physician or health care provider failed to meet those standards; and (3) the causal relationship between the failure and the

---

[2] The trial court also denied Dr. Flores's motion to dismiss, but granted Dr. Santoscoy's motion and dismissed the claims against him.

harm alleged. *TTHR Ltd. Partnership v. Moreno,* 401 S.W.3d 41, 44 (Tex. 2013); TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The report serves two functions. First, it must inform the defendant of the specific conduct the plaintiff has called into question, and second, the report must provide a basis for the trial court to conclude that the claims have merit. *Certified EMS, Inc. v. Potts,* 392 S.W.3d 625, 630 (Tex. 2013) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex. 2001)).

A challenge to the sufficiency of a report must be sustained if the report does not represent an objective good faith effort to comply with the statutory requirements. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l). A report is a good faith effort if it (1) provides adequate information to "inform the defendant of the specific conduct the plaintiff has called into question," (2) provides "a basis for the trial court to conclude that the claims have merit," and (3) "does not contain a material deficiency." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 141-42 (Tex. 2015) (per curiam) (quoting *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002) (per curiam), and *Samlowski v. Wooten,* 332 S.W.3d 404, 410 (Tex. 2011)).

### Standard of Review

A trial court's ruling on the sufficiency of an expert's report is reviewed for abuse of discretion. *Van Ness*, 461 S.W.3d at 142; *Rosemond v. Al–Lahiq,* 331 S.W.3d 764, 766 (Tex. 2011); *Palacios,* 46 S.W.3d at 877. Under that standard, appellate courts defer to the trial court's factual determinations if they are supported by evidence, but review its legal determinations de novo. *Van Ness*, 461 S.W.3d at 142; s*ee Stockton v. Offenbach,* 336 S.W.3d 610, 615 (Tex. 2011). A trial court abuses its discretion if it rules without reference to guiding rules or principles. *Van Ness*, 461 S.W.3d at 142; *Samlowski,* 332 S.W.3d at 410.

4

**Nurse Ridgely's Report**

The parties agree that Nurse Ridgely's report was served to support plaintiffs' survival claims for the pain Medrano suffered when the Tenet nurses attempted to remove the catheter two days after Medrano's initial surgery. Tenet contends in part that Nurse Ridgely was not qualified to opine as to causation. Plaintiffs recognize that a nurse is not qualified to opine on medical causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (restricting opinions on causation to physicians); *Tenet Hospitals Ltd. v. Barajas*, 451 S.W.3d 535, 547 (Tex.App. – El Paso 2014, no pet.); *Tenet Hospitals Ltd. v. Boada*, 304 S.W.3d 528, 543 (Tex.App. – El Paso 2009, pet. denied) (finding nurse unqualified to provide expert opinion on causation); *Costello v. Christus Santa Rosa Health Care Corp.,* 141 S.W.3d 245, 248 (Tex.App. – San Antonio 2004, no pet.) (a registered nurse is not qualified to express expert opinion as to causation).

Plaintiffs argue that no expert opinion was needed on causation. They contend the causal relationship between the nurses' persistent pulling on the lodged catheter and the resulting pain is apparent and can be provided by lay testimony. In this regard, plaintiffs rely on the common-law rule that while expert testimony is usually required in medical malpractice cases, lay testimony can establish causation "in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) (quoting *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984)).

Plaintiffs' reliance on *Jelinek* is misplaced. The Supreme Court's discussion of lay testimony of causation in *Jelinek* was made in the context of reviewing a jury's verdict, not in

5

reviewing a pre-trial expert report required under the TMLA.[3]  *Id*. at 533-34.  Under the TMLA, the basic requirements for what an expert report must contain are dictated by the statute, not by the common law.  The TMLA expressly provides that an expert report address not only the applicable standard of care and the breach of those standards, but also "the causal relationship between that failure and the injury, harm, or damages claimed."  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).  Because the statute is clear that an expert report must address causation, we cannot ignore that requirement simply because lay testimony may sometimes be deemed sufficient to establish causation under the common law.  *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 65 (Tex. 2014) ("We cannot ignore a statute's unambiguous language unless its meaning is so unreasonable that it 'would lead to absurd results.'").

Further, it is questionable whether lay testimony could establish that the nurses' alleged persistent pulling on the catheter caused Medrano "additional pain and suffering."  *See Jelinek*, 328 S.W.3d at 533 (noting that the issue in that medical malpractice case was whether the hospital's negligence caused plaintiff "additional pain and suffering").  Even proper medical treatment often causes pain.  Any recovery for pain and suffering in a medical malpractice case is limited to the additional pain and suffering caused by the improper medical treatment; recovery is not allowed for the normal pain that would have been experienced as part of proper treatment.  It is possible that even the proper removal of a catheter several days after its insertion could cause pain, even considerable pain.  Whether a patient may have experienced additional pain and suffering from improper removal is not, we believe, within "the general experience and common sense of laypersons."  *See id.* at 534.

---

[3] Ultimately in *Jelinek*, the Supreme Court held that the lay opinion testimony could not support a finding that the hospital's negligence caused the plaintiff additional pain and suffering.  328 S.W.3d at 534.

6

Plaintiffs also argue that Dr. Berger's report supplied the casual basis for the resultant pain.[4] In particular, plaintiffs note that Dr. Berger indicated that the catheter had been inadvertently stitched in place and that Dr. Boone's pulling on it severed Medrano's heart muscle. But, Dr. Berger only mentions that the nurses attempted to remove the catheter, met resistance, and notified Dr. Flores. Nowhere does Dr. Berger criticize the actions of the nurses, nor does he state that their actions caused Medrano additional pain. Dr. Berger's opinions on causation relate solely to the actions of Dr. Boone and Dr. Flores during the August 29 surgery to remove the catheter, which occurred the day after the nurses attempted removal. Essentially, plaintiffs are asking us to infer a causal link from Dr. Berger's report. But, we cannot infer causation either by filling in missing gaps or by guessing what an expert likely meant or intended. *Tenet Hospitals, Ltd. v. Garcia*, 462 S.W.3d 299, 310 (Tex.App. – El Paso 2015, no pet.) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002)); *Castillo v. August,* 248 S.W.3d 874, 883 (Tex.App. – El Paso 2008, no pet.).

A report does not constitute a good faith effort if it omits any of the statutory requirements. *Palacios,* 46 S.W.3d at 879; *Tenet Hospitals Ltd. v. Boada*, 304 S.W.3d 528, 543 (Tex.App. – El Paso 2009, pet. denied). Because Nurse Ridgely could not provide an opinion on causation concerning the nurses' actions, and because Dr. Berger did not provide that opinion, plaintiffs have failed to present any expert opinion on causation to support their survival claims against Tenet.[5]

---

[4] Expert reports can be considered together in determining whether the plaintiff in a health care liability claim has provided adequate expert opinion regarding the standard of care, breach, and causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i); *Salais v. Texas Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 534 (Tex.App. – Waco 2010, pet. denied); *Walgreen Co. v. Hieger,* 243 S.W.3d 183, 186 n.2 (Tex.App. – Houston [14th Dist.] 2007, pet. denied).

[5] We do not reach Tenet's contention that Nurse Ridgely's report contained unsupported assumptions concerning the training and qualification of the Tenet nurses.

This does not necessarily mean that the plaintiffs' survival claims fail, however. Plaintiffs also alleged that Tenet was liable for Medrano's death because Tenet was vicariously liable for the actions of Dr. Boone in prematurely pulling on the catheter and tearing her heart muscle. When a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, and there is an expert report sufficient to support that vicarious liability theory, the entire case may proceed. *Certified EMS, Inc.*, 392 S.W.3d at 632; *TTHR Ltd. Partnership,* 401 S.W.3d at 44 (holding that because the trial court did not abuse its discretion in finding the expert report adequate as to the vicarious liability claim against the hospital based on the actions of the doctors, plaintiff's suit against the hospital, including her claim that the hospital was vicariously liable for the actions of its nurses, could proceed). Thus, we proceed to address the adequacy of Dr. Berger's report concerning plaintiffs' wrongful death claims of vicarious liability against Tenet for the actions of Dr. Boone.

### Dr. Berger's Report

Tenet contends that Dr. Berger's report cannot support plaintiffs' wrongful death claims against it because the report does not mention Tenet or implicate its behavior. Tenet concedes that Dr. Berger's report attributes Medrano's wrongful death in part to the actions of Dr. Boone, and that the plaintiffs alleged that Tenet was vicariously liable for the negligence of Dr. Boone under the theory of ostensible agency. Tenet argues, however, that Dr. Berger's expert report is fatally deficient because it does not address vicarious liability and contains nothing to suggest that Medrano had a reasonable belief Dr. Boone was Tenet's agent or employee or that Tenet affirmatively held out Dr. Boone as its agent or employee or knowingly permitted Dr. Boone to so hold himself out. *See Baptist Memorial Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 949 (Tex. 1998)

8

(to establish a hospital's liability for an independent contractor's medical malpractice based on ostensible agency, a plaintiff must show that (1) he or she had a reasonable belief that the physician was the agent or employee of the hospital, (2) such belief was generated by the hospital affirmatively holding out the physician as its agent or employee or knowingly permitting the physician to hold himself out as the hospital's agent or employee, and (3) he or she justifiably relied on the representation of authority).

In this regard, Tenet relies on the Texas Supreme Court's decision in *In re McAllen Medical Ctr., Inc.*, in which the Supreme Court indicated that an expert report subject to the TMLA is required to address both the physician's conduct and the hospital's alleged vicarious liability for that conduct:

> [T]he plaintiffs pleaded that Dr. Bracamontes was the hospital's agent, and thus was vicariously liable for his negligence. This claim is viable only if the doctor was negligent, so it too is a health care liability claim and must be supported by an expert report. But nothing in [the expert's] reports suggest the hospital controlled the details of his medical tasks (a requirement for hospital liability), and the plaintiffs do not argue otherwise on appeal.

275 S.W.3d 458, 463-64 (Tex. 2008) (orig. proceeding) (footnote omitted).

On the other hand, plaintiffs rely on *Gardner v. U.S. Imaging, Inc.*, in which – four months after *In re McAllen* – the Supreme Court again addressed this issue, but this time indicated that when the hospital's negligence is purely vicarious, the expert report need only address the underlying actions of its "agents or employees":

> SADI[6] additionally contends it was not served with an expert report because the report that was served does not mention SADI or implicate its behavior. The Gardners respond that because SADI's alleged liability is purely vicarious in nature, the report as to Dr. Keszler was sufficient. To the extent the allegations against SADI are based upon respondeat superior, we agree with the Gardners.

---

[6] SADI was the facility where the physician, Dr. Keszler, had performed the lumbar epidural procedure the Gardners alleged was negligent.

> When a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient.

274 S.W.3d 669, 671-72 (Tex. 2008) (per curiam).

Tenet argues that *Gardner* must be read narrowly, and that *Gardner* does not apply because Tenet contested plaintiffs' allegation that it was vicariously liable for Dr. Boone's actions. Tenet notes that there is no record in *Gardner* that SADI, the facility where the doctor performed the procedure, contested the employment relationship underlying plaintiff's vicarious liability claim. We agree that neither the decision of the Supreme Court nor the decision of the court of appeals in *Gardner* indicates that SADI was contesting its alleged employment relationship with the negligent doctor. *See Gardner*, 274 S.W.3d at 669-72; *U.S. Imaging, Inc. v. Gardner*, 274 S.W.3d 693, 693-96 (Tex.App. – San Antonio Dec. 28, 2007) (mem. op.), *rev'd*, 274 S.W.3d 669 (Tex. 2008). SADI, however, filed both a response to the petition for review and a brief on the merits in the Supreme Court, and both reveal that the facility was in fact contesting whether the negligent doctor, Dr. Keszler, was its employee or agent.[7] Accordingly, we do not believe that the Supreme Court intended the rule stated in *Gardner* to be applied only when the employment or agency relationship is uncontested. *See Southwest Gen. Hosp., L.P. v. Gomez*, 357 S.W.3d 109, 114 (Tex.App. – San Antonio 2011, no pet.) (declining to interpret *Gardner* as limited solely to allegations of respondeat superior, and as not encompassing other allegations of vicarious liability such as ostensible agency). Accordingly, we conclude that the approach taken by the Supreme

---

[7] Both SADI's response and brief argue that the plaintiff's expert report "does not place any representative or employee of SADI in Mr. Gardner's operating room at any time before, during, or after the procedure," "does not identify what role SADI had in Mr. Gardner's post-operative care," and "does not provide any information linking" the expert's "conclusions to the conduct of SADI, as opposed to the conduct of Dr. Keszler[.]" SADI Response to Petition for Review at 3; SADI Brief on Merits at 6-7. These documents are available on the Texas Supreme Court website, www.txcourts.gov//supreme.aspx, Appeal No. 08-0268, Case Information, Appellate Briefs.

Court in *Gardner* is applicable here, and that Dr. Berger's expert report was not required to address Tenet's vicarious liability to be deemed adequate under the TMLA.

Our conclusion is informed in part by the Supreme Court's subsequent decisions implicitly recognizing the holding in *Gardner*, and the corresponding lack of Supreme Court decisions applying the holding in *In re McAllen* that an expert report must address the plaintiff's theory of vicarious liability.

For example, in *Certified EMS, Inc. v. Potts,* the plaintiff alleged both direct and vicarious liability theories against the defendant. The Supreme Court concluded that the TMLA does not require an expert report to address each liability theory pleaded against a defendant, and held that the plaintiff secured "her right to have the entire case move forward," because she "demonstrated to the trial court that at least one of her alleged theories – vicarious liability – had expert support." 392 S.W.3d at 631-32. In explaining why certain language in *Gardner* did not compel a contrary conclusion, the Supreme Court again reiterated – as it had previously recognized in *Gardner* – that "when a health care liability claim involves a vicarious liability theory, either alone or in combination with other theories, an expert report that meets the statutory standards as to the employee is sufficient to implicate the employer's conduct under the vicarious theory." *Id*. at 632.

We recognize that in *Certified EMS, Inc.* the defendant had not challenged the adequacy of the expert report as to its vicarious liability. *Id*. at 626. However, in a case decided less than two months' later, the defendant hospital did not concede that it was vicariously liable for the doctors' actions. *TTHR Ltd. Partnership v. Moreno,* 401 S.W.3d 41, 44 n.4 (Tex. 2013). There, the plaintiff alleged the hospital was liable because of its own direct negligence as well as its vicarious

11

liability for the negligence of its nurses and two doctors. *Id*. at 43. The Supreme Court did not address the claims of direct liability or of the hospital's vicarious liability for the nurses' negligence, because under *Certified EMS, Inc.*, the plaintiff's claims could proceed if the reports were adequate as to the hospital's vicarious liability for the doctors' actions. *Id*. at 45. The Supreme Court determined that the plaintiff's expert reports were adequate "as to the claim that [the hospital] is vicariously liable for actions of the doctors" because the reports adequately addressed the standard of care, breach, and causation as to the doctors. *Id*. at 44. In doing so, the Supreme Court did not mention *In re McAllen,* nor did the Supreme Court apply *McAllen's* purported requirement that the expert report address the factual merits of the plaintiff's theory of vicarious liability. Rather, the Court analyzed the sufficiency of the expert reports only with respect to the doctors' actions.[8] *Id.*

Further, there is nothing in the record before us rebutting plaintiffs' allegation that Dr. Boone was acting as Tenet's ostensible agent. In *Loaisiga v. Cerda*, 379 S.W.3d 248, 261 (Tex. 2012), the Supreme Court held that an expert may consider and assume the "validity of matters set out in pleadings in the suit, absent a showing that the pleadings are groundless or in bad faith or rebutted by evidence in the record." We recognize that the Court in *Loaisiga* was holding only that an expert must consider both the pleadings and the medical records in formulating his opinion, and did not suggest that a merits-based evidentiary hearing as to liability was proper or necessary when considering the adequacy of an expert report. But, assuming *Loaisiga* applies to allegations of vicarious liability, Tenet has made no showing that plaintiffs' pleading of ostensible agency is

---

[8] In *TTHR Ltd. Partnership,* the Supreme Court noted that the hospital had acknowledged that whether it could be vicariously liable for the doctors' actions "is not a question to be determined in this appeal." *Id*. at 44, n.4. It can be inferred that the reason the validity of the vicarious liability theory was not an issue to be determined in the appeal was because the TMLA does not require an expert report to address the validity of a vicarious liability theory.

groundless or made in bad faith, or that there is other evidence in the record rebutting that allegation. Accordingly, we conclude that Dr. Berger was not required to address Tenet's vicarious liability for the actions of Dr. Boone in order for his report to be adequate.

We recognize Tenet's concern that by the "artful pleading" of vicarious liability, a plaintiff could avoid early dismissal and impermissibly prolong a medical malpractice case in contravention of the TMLA's purpose to summarily dispense with cases that are without merit. But, there are other remedies already provided by Texas law to address allegations of vicarious liability that are frivolous or made in bad faith. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 9.001-.014 (West 2002) (providing for sanctions, including the striking of pleadings, when a pleading is determined to be groundless and brought in bad faith); TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001-.006 (West 2002) (providing for monetary sanctions when a pleading is filed without evidentiary support or is unlikely to have such support after reasonable discovery); TEX. R. CIV. P. 13 (providing for an appropriate sanction under Rule 215 for pleadings brought in bad faith or that are groundless and brought for purposes of harassment), TEX. R. CIV. P. 91a (providing for the dismissal of causes of action having no basis in law or fact).

In fact, Tenet filed special exceptions to plaintiffs' allegations that it was vicariously liable for Dr. Boone's negligence under the theory of ostensible agency. The record does not reflect whether Tenet presented those exceptions to the trial court. But, we note that had those special exceptions been sustained by the court, and plaintiffs failed to amend after being given an opportunity to replead, their wrongful death claims may have been subject to dismissal for failure to state a claim. *See Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983); *Texas Dep't of Corr. v. Herring*, 513 S.W.2d 6, 9-10 (Tex. 1974); *Amador v. Tan*, 855 S.W.2d 131, 133 (Tex.App.

13

– El Paso 1993, writ denied). Further, a no-evidence motion for summary judgment is available for a determination on the merits whether plaintiffs have any factual basis for their allegation of ostensible agency. *See* Tex. R. Civ. P. 166a(i).

Tenet also contends that Dr. Berger's report was conclusory as to causation and contained an analytical gap in tying the alleged negligence occurring in the August 29 surgery with Medrano's death two and one-half months' later. Dr. Berger's report states that Dr. Boone's premature attempt to remove the catheter proximately caused a massive hemorrhage when the stitch holding the catheter tore through the superior-vena-cava/right-atrium junction, and proximately caused "subsequent sequellae of the hemorrhage including shock, multiorgan system failure and death." Dr. Berger explains how Dr. Flores's actions in spending almost an hour attempting to repair the tear without cardiopulmonary bypass caused Medrano to experience further low blood pressure and anoxic injury to her organs. And, Dr. Berger addresses how Dr. Flores's failure to cannulate in such a way to permit an accurate and safe repair of the tear led to a complete obstruction to the superior vena cava and SVC syndrome, which required Medrano's third surgery by Dr. Santoscoy to repair her SVC. Dr. Berger's report states that although Dr. Santoscoy's procedure "was technically successful, Ms. Medrano continued to deteriorate and died on 11/16/11." The report concludes that: "Each of the above deviations was a proximate cause of Ms. Medrano's death." We agree with Tenet that Dr. Berger's report is deficient as to causation, in particular because it does not adequately explain how the conditions arising from the August 29 surgery caused Medrano's death two and one-half months' later.

We faced a similar situation in *Clapp v. Perez*, 394 S.W.3d 254 (Tex.App. – El Paso 2012, no pet.). In that case, Dr. Clapp performed gastric bypass surgery on Perez who subsequently

14

developed an intestinal obstruction that required Dr. Clapp to perform emergency surgery three days later. *Id.* at 257. During emergency surgery, Perez aspirated when Dr. Gagot induced anesthesia. *Id.* Thereafter, Perez was admitted to the ICU, where she remained in critical condition until her death two weeks later. *Id.* The amended expert report described the causal relationship between doctors' negligence and Perez's death as follows: "[Placing a nasal-gastric tube prior to the emergency surgery] would have emptied the stomach (gastric gland) of its contents and prevented the aspiration that did eventually occur and led to aspiration pneumonia, prolonged intubation with ARDS, multi-organ failure and then death of Mrs. Perez." *Id*. at 261. We concluded the report did not adequately link Perez's death to the failure to insert the nasal-gastric tube that had occurred two weeks earlier. *Id*. at 262. We dismissed the claims against Dr. Clapp in part because of this deficiency. We did not consider, however, whether the plaintiffs were entitled to an opportunity to cure because the expert's initial report had been stricken and the trial court had already granted plaintiffs a thirty-day extension of time to file the amended report. *Id*. at 257 n.1, 262.

In the present case, however, the plaintiffs have not been given an opportunity to cure any deficiencies in Dr. Berger's report. In *Gardner*, the expert report stated only that the plaintiff's meningitis and hearing loss were "directly related" to the lumbar epidural procedure. *Gardner*, 274 S.W.3d at 695-96. The court of appeals found the report conclusory as to causation and reversed and remanded for dismissal and an award of attorney's fees to defendants. *Id*. at 696. The Supreme Court, however, concluded that the report, while deficient, was not "so deficient as to constitute no report at all," and concluded that the court of appeals should have remanded the

15

suit to the trial court to consider granting a thirty-day extension to cure.  *Gardner*, 274 S.W.3d at 671.

Likewise, while Dr. Berger's report is deficient as to causation, it is not so deficient as to constitute no report at all.  Accordingly, we remand this case to the trial court to consider granting a thirty-day extension to cure.[9]  *See Scoresby v. Santillan*, 346 S.W.3d 546, 549, 557 (Tex. 2011) (the standard for granting a thirty-day extension to cure a deficient report is lenient and is available as long as the report contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit).  In doing so, we note that the trial court "should be lenient in granting thirty-day extensions and must do so if deficiencies in an expert report can be cured within the thirty-day period."  *Id.* at 554.

## CONCLUSION

We reverse the trial court's order denying Tenet's motion to dismiss and remand for further proceedings consistent with this opinion.

_____
STEVEN L. HUGHES, Justice

November 18, 2015

Before Rodriguez, J., Hughes, J., and Larsen, J. (Senior Judge)
Larsen, J. (Senior Judge), sitting by assignment

---

[9] Tenet also contends that Dr. Berger's qualifications were "stale" and he was not qualified to establish the standard of care for the anesthesiologist, Dr. Boone, and that Dr. Berger's report was speculative and conclusory as to breach. We do not address these deficiencies because they would also be subject to a cure on remand.  *See Gardner*, 274 S.W.3d at 671 n.2 (where the Supreme Court declined to address the alleged deficiency concerning the expert's qualifications because that deficiency could also be cured on remand); *see also Scoresby*, 346 S.W.3d at 549 ("An individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so.").