COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BENJAMIN CLAPP, M.D. and JULIO GAGOT-PIZARRO, M.D., | § | |
| | § | |
| Appellants, | | No. 08-11-00133-CV |
| | § | |
| v. | | Appeal from the |
| | § | |
| SARAH PEREZ, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF PATRICIA PEREZ, DECEASED, and SARAH PEREZ, ISAAC PEREZ, and JASON PEREZ, AS HEIRS AT LAW OF PATRICIA PEREZ, | § | 346th Judicial District Court |
| | § | of El Paso County, Texas |
| | § | |
| | § | (TC#2009-5202) |
| | § | |
| Appellees. | § | |

**O P I N I O N**

These two interlocutory appeals concern the adequacy of an expert report filed in a medical malpractice suit. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351 (West 2011). Asserting that the expert report is inadequate, Drs. Benjamin Clapp and Julio Gagot-Pizzaro argue that the trial court abused its discretion by denying their motions to dismiss the lawsuit.

**FACTUAL AND PROCEDURAL BACKGROUND**

In early December 2007, Dr. Clapp performed gastric bypass surgery on Patricia Perez ("Perez"). Following bypass surgery, Perez developed an intestinal obstruction that required Dr. Clapp to perform emergency surgery three days later. During emergency surgery, Perez aspirated when Dr. Gagot induced anesthesia. Thereafter, Perez was admitted to the ICU, where she remained in critical condition until her death two weeks later.

Approximately two years later, Perez's personal representative and heirs sued Drs. Clapp and Gagot for wrongful death. Plaintiffs alleged that Drs. Clapp and Gagot were negligent

because they failed to insert a nasal-gastric tube before surgery to prevent aspiration and because they failed to stop the surgery to treat Perez as she aspirated. As required, Plaintiffs filed and served the report and curriculum vitae of a single expert: Dr. Hector J. Herrera, a board certified anesthesiologist licensed to practice in Texas.[1] Arguing that Dr. Herrera's report was deficient in several respects, Drs. Clapp and Gagot filed separate motions to dismiss the lawsuit. In separate orders, the trial court denied the motions.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to dismiss a health care liability claim for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001)(discussing former Article 4590i). A trial court has no discretion in determining what the law is or in applying the law to the facts, and abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)(discussing former Article 4590i); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

## EXPERT REPORT REQUIREMENTS

In a suit involving a health care liability claim against a physician, a plaintiff must provide the defendant physician with an expert report. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). If a plaintiff timely furnishes an expert report, a defendant physician may file a motion challenging the report's adequacy. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). A report is adequate if it represents "an objective good faith effort to comply with the definition of an expert report . . . ." *See id.* at § 74.351(l). As defined, an expert report "provides

---

[1] The expert report at issue is the second completed by Dr. Herrera and filed by Plaintiffs. The first expert report completed by Dr. Herrera was struck by the trial court; however, the trial court granted Plaintiffs a thirty-day extension of time to file an amended report.

a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* at § 74.351(r)(6). A report that does not represent a good faith effort to comply with the definition of an expert report is inadequate, and a trial court must grant a motion challenging the adequacy of the expert report. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(l).

If an expert report is to constitute a good faith effort, it must provide enough information regarding the expert's opinions on the three statutory elements – standard of care, breach, and causation – to fulfill two purposes. *Palacios*, 46 S.W.3d at 879. First, the report must inform the defendant of the specific conduct the plaintiff calls into question. *Id.* Second, the report must provide a basis for the trial judge to determine that the claims have merit. *Id.* Although the report need not marshal all the plaintiff's proof, if the report does not meet these two purposes and omits any of the statutory requirements, it does not constitute a good faith effort. *Id.* Moreover, a report that merely states the expert's conclusions concerning the standard of care, breach, and causation does not constitute a good faith effort. *Id.* To constitute a good faith effort, a report must explain the basis of the expert's statements and link his or her conclusions to the facts. *Bowie,* 79 S.W.3d at 52. In determining whether the report constitutes a good faith effort, the trial court is limited to the information contained within the four corners of the report and may not draw inferences to supply absent necessary information. *Palacios*, 46 S.W.3d at 878; *Bowie*, 79 S.W.3d at 53.

**SINGLE STANDARD OF CARE, BREACH, AND CAUSATION**

Drs. Clapp and Gagot each contend that Dr. Herrera's report is deficient because it requires

3

them to speculate about what each of them is alleged to have done wrong by attributing to them a single standard of care, breach, and causation without providing any basis or explanation as to why they were equally responsible for Perez's injury.[2]   We agree.

*Applicable Law*

When a plaintiff sues more than one physician, the expert report, in order to constitute a good faith effort, must set forth the standard of care applicable to each physician and explain the causal relationship between each physician's individual acts and the injury.   *Tenet Hosps. Ltd. v. De La Riva*, 351 S.W.3d 398, 404 (Tex.App.--El Paso 2011, no pet.); *Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 743, 753 (Tex.App.--El Paso 2011, no pet.).   This is not to state that an expert report concluding that multiple physicians owed the same standard of care to the plaintiff and breached that duty in the same manner can never constitute a good faith effort.   Clearly, a report that so concludes can constitute a good faith effort.   *See Methodist Hosp. v. Shepherd-Sherman*, 296 S.W.3d 193, 199 (Tex.App.--Houston [14th Dist.] 2009, no pet.); *San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 817 (Tex.App.--Houston [14th Dist.] 2008, no pet.); *In re Stacy K. Boone, P.A.*, 223 S.W.3d 398, 405 (Tex.App.--Amarillo 2006, orig. proceeding).   But if an expert report concluding that different physicians are collectively negligent is to constitute a good faith effort, it must explain why, under the particular circumstances, the physicians owed the same standard of care to the plaintiff and breached that duty in the same manner.   *Love*, 347 S.W.3d at 753; *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 244 (Tex.App.--Corpus Christi 2004, no pet.).   An expert report that fails to provide a reasoned explanation, supported by

---

[2] Drs. Clapp and Gagot raise other issues challenging the adequacy of Dr. Herrera's report, namely that Dr. Herrera was not qualified to render an opinion and that the report merely states his conclusions about causation.   In light of our disposition of this appeal on the basis that Dr. Herrera's report failed to differentiate between Drs. Clapp and Gagot in setting out the standard of care, breach, and causation, we need not address the other issues Drs. Clapp and Gagot raise.   *See* TEX. R. APP. P. 47.1 (stating court of appeals must hand down written opinion that is as brief as practicable but that addresses every issue raised *and necessary* to final disposition of appeal).

specific facts, why different physicians are collectively negligent is inadequate. *Love*, 347 S.W.3d at 753; *Taylor*, 169 S.W.3d at 244.

### *Discussion*

In this case, Dr. Herrera's report is inadequate because, in addressing each of the statutory elements, it fails to provide a reasoned explanation, supported by specific facts, why Drs. Clapp and Gagot – physicians with differing specialties – owed the same standard of care to Perez, how each breached that standard of care, and how their respective breaches caused to Perez's death.

### 1. Standard of Care

Dr. Herrera's report does not adequately set out the respective standards of care for Drs. Clapp and Gagot and therefore does not constitute a good faith effort to provide a fair summary of his opinion on the standard of care. Identifying the standard of care in a report is essential because whether a defendant breached his duty cannot be determined absent specific information about what the defendant should have done differently. *Palacios*, 46 S.W.3d at 880; *Love*, 347 S.W.3d at 753. Here, Dr. Herrera identifies the applicable standard of care in his report as follows:

> The standard of care in the State of Texas requires measures to prevent and ameliorate aspiration of gastric contents during induction of general anesthesia in patients with gastric and bowel obstructions. These measures include: intravenous antacids, placement of a nasal-gastric tube followed by suctioning immediately prior to induction of anesthesia and use of a rapid sequence induction with cricoid pressure during induction of anesthesia.

This vague statement does not indicate whether the standard of care was applicable to Dr. Clapp, Dr. Gagot, or to both. If the standard of care was the same for Drs. Clapp and Gagot, then Dr. Herrera was required to have so stated in his report. *See Love*, 347 S.W.3d at 753. But rather than explicitly state so, Dr. Herrera only implies that Drs. Clapp and Gagot were jointly

5

responsible for making certain that Perez had a nasal-gastric tube inserted before surgery. However, as noted above, we are prohibited from drawing inferences to supply absent necessary information. *See Palacios*, 46 S.W.3d at 878; *Bowie*, 79 S.W.3d at 53.

Even were we permitted to infer that Drs. Clapp and Gagot were jointly responsible for inserting the nasal-gastric tube, Dr. Herrera's report remains inadequate for two reasons. First, Dr. Herrera never explains in his report why under the particular facts present in this case – emergency surgery to remove an intestinal obstruction – Drs. Clapp and Gagot, who practice different specialties, owed the same standard of care to Perez. Second, Dr. Herrera fails to identify and discuss in his report how a surgeon carries out his portion of the shared responsibility and how an anesthesiologist carries out his portion. As a result of this omission, we are unable to determine which physician was responsible for determining the necessity of a nasal-gastric tube and for making certain that if a tube was necessary, it was inserted.

Relying upon *Hollingsworth v. Springs*, 353 S.W.3d 506 (Tex.App.--Dallas 2011, no pet.), Appellees argue that Dr. Herrera's report adequately establishes that Drs. Clapp and Gagot owed the same standard of care to Perez. Appellees' reliance on *Hollingsworth* is misplaced. In *Hollingsworth*, the plaintiff sued twelve defendants and pled her claims against them in groups of defendants who had the same or similar duties, and made the same specific charges of negligence against all members of each group. 353 S.W.3d at 511-13. The three expert reports the plaintiff submitted also addressed the defendants in the groups classified by the plaintiff. *Hollingsworth*, 353 S.W.3d at 513. In analyzing the three reports, the court noted that the reports carefully named and addressed all defendants and the standards of care and breach applicable to each of them. *Id.* Significantly, the court distinguished the reports from those reports "in which the expert offers

6

theoretical opinions without identifying any person who allegedly committed the violation of the standard of care . . . [or] in which the expert groups defendants together who have different standards of care for their dealings with a patient." *Id.* at 513-14.

This is not the situation here. Unlike the experts in *Hollingsworth*, Dr. Herrera does not carefully name and address Drs. Clapp and Gagot and the standards of care and breach applicable to them individually. Rather, Dr. Herrera offers theoretical opinions about the standard of care without identifying which physician allegedly committed the violation of the standard of care, and groups Drs. Clapp and Gagot together notwithstanding the different standards of care for their interactions with the patient. In fact, Dr. Herrera's report is more akin to the report found inadequate by the court in *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 245-46 (Tex.App.--Corpus Christi 2004, no pet.)(expert presented single standard of care for emergency room physician, hospital, cardiology association, and others). Accordingly, we are not swayed that *Hollingsworth* controls.

## 2. Breach

Dr. Herrera's report fails to establish specifically what Drs. Clapp and Gagot did or did not do in failing to ensure that a nasal-gastric tube was inserted before surgery and thus does not constitute a good faith effort to provide a fair summary of his opinion on the breach of the standard of care. If an expert report is to summarize fairly the expert's opinion regarding the manner in which a physician breached the standard of care, the report must specify what action or inaction constituted a breach of the standard of care. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006)(per curiam)(discussing predecessor statute). Here, Dr. Herrera concludes in his report that Drs. Clapp and Gagot breached the standard of care as follows:

Mrs. Perez's gastric obstruction was diagnosed following an abdominal CT

7

scan done early in the morning on 12/06/2007. The scan showed 'a very markedly distended Roux limb pouch', as reported by the [sic] Dr. Benjamin Clapp, the surgeon. Given this information, Dr. Julio Gagot the anesthesiologist, and Dr. Clapp breached the standard of care by failing to place a nasal-gastric tube prior to the emergency surgery.

Although Dr. Herrera asserts that Drs. Clapp and Gagot breached the standard of care by failing to insert the nasal-gastric tube before surgery, he never identifies or explains what Drs. Clapp and Gagot each specifically did or failed to do in breaching the standard of care.

For instance, Dr. Herrera never asserts in his report that Dr. Clapp or Dr. Gagot personally failed to order a nasal-gastric tube before surgery or, if ordered, failed to make certain it was inserted. Likewise lacking in the specificity required to attribute negligence to a particular physician in failing to insert a nasal-gastric tube is Dr. Herrera's conclusion that the tube should have been inserted before surgery because Dr. Clapp reported that Perez's CT scan showed that she had "a very markedly distended Roux limb pouch." Although Dr. Herrera singles out Dr. Clapp as the defendant responsible for interpreting the CT scan, he never asserts that Dr. Clapp had an obligation to report this information to Dr. Gagot and failed to do so. Along the same lines, Dr. Herrera never asserts that Dr. Gagot was ever provided the CT scan or had an independent duty to review it or that Dr. Gagot was aware of the distended pouch and chose not to insert the tube.

### 3. Causation

Dr. Herrera's report also fails to demonstrate a causal link between Drs. Clapp's and Gagot's conduct and Perez's death and therefore does not constitute a good faith effort to provide a fair summary of his opinion on causation. In providing a fair summary of the causal relationship

8

between a physician's breach of the standard of care and the harm alleged, an expert report must establish the causal relationship by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission, the harm would not have occurred. *Bowie*, 79 S.W.3d at 53; *Love*, 347 S.W.3d at 755. Here, Dr. Herrera describes the causal relationship between Drs. Clapp's and Gagot's negligence and Perez's death as follows:

> [Placing a nasal-gastric tube prior to the emergency surgery] would have emptied the stomach (gastric gland) of its contents and prevented the aspiration that did eventually occur and led to aspiration pneumonia, prolonged intubation with ARDS, multi-organ failure and then death of Mrs. Perez.

Although broad and sweeping in scope, this statement is nothing more than Dr. Herrera's conclusion that the breach caused the injury. Moreover, Dr. Herrera fails to link Perez's death to any specific physician.

In essence, Dr. Herrera simply opines that one event caused another without explaining how the failure to insert a nasal-gastric tube resulted in aspiration, aspiration pneumonia, prolonged intubation with ARDS[3], multi-organ failure, and ultimately death. By opining that Perez died because Drs. Clapp and Gagot failed to insert a nasal-gastric tube before surgery, Dr. Herrera simply expressed his conclusion without stating the underlying facts necessary to establish that the failure to place a nasal-gastric tube was a substantial factor in causing Perez's death, and that absent this failure, Perez would not have died. In other words, Dr. Herrera fails to explain the basis of his statements linking his conclusions to the facts. *See Bowie,* 79 S.W.3d at 53.

**CONCLUSION**

Although we recognize that Plaintiffs were not required to marshal all of their proof as if they were actually litigating their claim, we can only speculate as to what Dr. Herrera intended in

---

[3] ARDS is the acronym for Acute Respiratory Distress Syndrome.

his report.  The report does not clearly specify the respective standards of care and how each physician breached their respective standard of care.   The report does not adequately link Perez's death to either physician or to the failure to insert the nasal-gastric tube.

Accordingly, we reverse the trial court's judgment and dismiss Plaintiffs' claims against Drs. Clapp and Gagot.


September 19, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.