COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| JULIO A. HERNANDEZ AND ROCIO MARTINEZ, | § | No. 08-18-00011-CV |
| | § | Appeal from |
| Appellants, | § | |
| | § | 448th District Court |
| v. | § | of El Paso County, Texas |
| ENES M. KANLIC, M.D., EL PASO COUNTY HOSPITAL DISTRICT D/B/A | § | (TC # 2016DCV3128) |
| UNIVERSITY MEDICAL CENTER, AND TEXAS TECH HEALTH | § | |
| SCIENCES CENTER, | § | |
| Appellees. | § | |

## **O P I N I O N**

This appeal explores the complexities of whether to sue either a governmental employee or governmental entity under the Texas Tort Claims Act's election-of-remedies provision and pre-suit notice requirements. The situation is further complicated here with the overlap of the Texas Medical Liability Act with its expert report requirement. And these issues all swirl around the different governmental employees found in the surgical theater of a public hospital served by a medical school.

Tragically, Julio Hernandez was rendered a paraplegic following pelvic surgery at University Medical Center, which is a public hospital run by the El Paso County Hospital District

(and hereinafter "UMC"). The surgeon, Enes M. Kanlic, MD, was employed at the time by Texas Tech University Health Sciences Center ("TTUHSC"). As we explain below, UMC, Dr. Kanlic, and TTUHSC were all dismissed on what could be termed procedural motions--that is, motions based on the failure to file an expert report, or failure to serve a notice of claim, or failure to sue the correct party. The net result is that Hernandez lost his opportunity to litigate the merits of his medical malpractice claim. While that result adds a second possible tragedy to this story, we are precluded from granting any of the relief sought, and we affirm the judgment below.

## BACKGROUND

### The Claim

Julio Hernandez was injured in a vehicular accident and admitted to UMC. While at UMC, Dr. Kanlic performed a surgery to repair Hernandez's pelvis on August 18, 2014. Following the surgery, Hernandez lost all feeling below the waist. The claim here, supported by the expert report of a physician, is that during the pelvic surgery Hernandez's lower spine was negligently mispositioned with the use some device, such as a sandbag, so as to hyperextend the spine. This restricted blood flow to his spinal cord which rendered him a paraplegic. For the purposes of this appeal, we assume all these facts to be true, noting that none of the allegations have been proven before a fact finder.

### Pre-suit Notices

UMC is a governmental entity and as such enjoys governmental immunity.[1] Dr. Kanlic was an employee of TTUHSC at the time of the surgery. TTUHSC is as arm of the State of Texas

---

[1] *Salcedo v. El Paso Hosp. Dist*., 659 S.W.2d 30, 31 (Tex. 1983).

and enjoys sovereign immunity.[2] The status of these parties presented Hernandez with distinct hurdles in vindicating his rights.

The Texas Tort Claims Act (TTCA) governs suits against state agencies and governmental units. TEX.CIV.PRAC.&REM.CODE ANN. § 101.025 (waiver of immunity to the extent of TTCA's provisions). Under the TTCA, a governmental entity is entitled to receive notice of a claim against it "not later than six months after the day that the incident giving rise to the claim" that describes the incident, its time and place, and the damages or injury. *Id.* at § 101.101(a). As an exception, formal notice is excused if the governmental unit has actual notice that the claimant has received some injury. *Id.* at § 101.101(c).

From our record, an attorney representing Hernandez and his wife, Rocio Martinez, sent a notice letter to UMC on February 13, 2015, which would be within the six-month window. Our record lacks any formal notice letter sent to TTUHSC or Dr. Kanlic, or proof of their actual knowledge of the injury.[3]

### The Lawsuit

Hernandez and his wife (who we collectively refer to as "Hernandez") filed their suit on August 16, 2016. They named Dr. Kanlic and UMC as defendants, but the pleading itself made no substantive allegations against UMC. Instead, the pleading in its factual and liability sections, uses to the singular term "Defendant" which refers only to Dr. Kanlic. UMC answered and complained that the body of the petition made no substantive mention of UMC. Hernandez responded by filing an amended petition, that added this single sentence allegation against UMC:

---

[2] *See Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex. 1976)(State universities are state agencies and share the State's immunity); *Texas Tech University Health Sciences Ctr.-El Paso v. Bustillos*, 556 S.W.3d 394, 400 n.6 (Tex.App.--El Paso 2018, no pet.).

[3] A separate body of law has developed around the requirements of that notice. *See e.g. Cathey v. Booth*, 900 S.W.2d 339, 340 (Tex. 1995).

3

Additionally, and in the alternative, **EL PASO COUNTY HOSPITAL DISTRICT D/B/A UNIVERSITY MEDICAL CENTER** is vicariously liable and directly liable for the negligence of its employees who dropped the plaintiff or otherwise mishandled the plaintiff resulting in injury to his spinal column resulting in paralysis. [bolding original]

## UMC is Dismissed

Hernandez's claim also implicates the Texas Medical Liability Act (TMLA), as UMC and Dr. Kanlic are health care providers, the injury occurred during a medical procedure, and would undoubtedly constitute a health care liability claim. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). The TMLA requires that within 120 days of when each defendant health care provider files an answer that an "expert report" as to that provider must be served by the plaintiff. TEX.CIV.PRAC.&REM.CODE ANN. § 74.001(a)(11)(12)(13)(definitions of health care institution, health care provider, and health care liability claim). An "expert report" is statutorily defined as one that "provides a fair summary of the expert's opinions" regarding (1) the standard of care, (2) how the health care provider failed to meet that standard, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* at § 74.351(r)(6). The report must distinctly address each health care defendant's breach of the standard of care and how that breach caused injury. *Clapp v. Perez*, 394 S.W.3d 254, 259 (Tex.App.--El Paso 2012, no pet.).

Hernandez filed a report directed at the conduct of Dr. Kanlic. It generally alleged that the use of sandbags or other devices used to position Hernandez's body were misused so as to cause ischemia (loss of blood flow) in the nerves innervating the legs. The loss of blood flow caused permanent injury to those nerves, rendering Hernandez a paraplegic. The report directs its criticism exclusively at Dr. Kanlic, who is referred to a doctor employed by Texas Tech University. After the deadline for filing reports passed, UMC filed a motion to dismiss the claim against it based on the lack a report directed to the conduct of its employees. The record does not show that

4

Hernandez and his wife filed any responsive pleading to the motion to dismiss. The court granted

UMC's motion. Our record does not contain the transcript of a hearing on that motion, but at a

later hearing Hernandez's counsel stated that he agreed to the dismissal order.

> [HERNANDEZ'S COUNSEL]: You know, Judge, there is also another order of dismissal regarding El Paso County Hospital District. I also agreed to that, but I don't know if it's been entered by you yet. Are you aware of that?
>
> THE COURT: I did sign the order dismissing --
>
> [HERNANDEZ'S COUNSEL]: The county hospital.

### Dr. Kanlic and TTUHSC Do a Texas Two-Step

After UMC's dismissal, Dr. Kanlic was the sole remaining defendant. He then urged his

own motion to dismiss based on TEX.CIV.PRAC.&REM.CODE ANN. 101.106(f). That statute

provides:

> (f) If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

*Id.* Dr. Kanlic's motion to dismiss alleged that his conduct fell within the general scope of his

employment with TTUHSC. The motion was supported by an affidavit of TTUHSC's Executive

Director of Human Resources who swore that Dr. Kanlic was a "faculty physician" in TTUHSC's

Department of Orthopedic Surgery at the time of the surgery and "wholly compensated" by

TTUHSC for the procedure.

At a hearing on that motion, Hernandez agreed that under the statute, TTUHSC was the

proper defendant, and the trial court should enter an order dismissing Dr. Kanlic:

> [HERNANDEZ'S COUNSEL]: Yes, Judge. And we don't really need a hearing on this. First want to apologize. I don't know why this wasn't on my calendar. I called Ms. Cobb last week. I wanted to discuss this case, because I read the case

law on it.  And I think the case law, *Franka v. Velasquez*, which is 332 S.W.3d 362, [sic] supports the motion.  So I think the -- although morally I don't agree with it, but it's the law in Texas. I think the doctor has to be substituted by the employer, Texas Tech, under the law.[4]

The trial court signed an order dismissing Dr. Kanlic and within thirty days of that order, Hernandez filed a third amended petition that named TTUHSC as the sole remaining defendant.

TTUHSC then filed its own motion to dismiss and plea to the jurisdiction, which principally alleged that it had never received notice of the injury under Section 101.101. Hernandez did contest that motion.  The response argued that Section 101.106(f) is in conflict with Section 101.106(b) that reads:  "The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents."  TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(b) From that, Hernandez argued the election-of-remedies provisions violate the Texas Constitution's Open Courts Clause.[5]  The trial court granted TTUHSC's motion, resulting in a final dismissal as to all parties.[6]

The Hernandez filed a motion for new trial that raised some additional arguments that we discuss below.  The trial court denied that motion and this appeal follows.

---

[4] Counsel referred to *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011).  That case holds that under Section 101.106(f), the phrase "could have been brought under this chapter against the governmental unit" does not require that immunity is in fact waived as to the claim asserted against the governmental unit.  *Id.* at 385.  That is, the governmental unit could be substituted in for the employee and then pursue its own motion asserting that immunity bars the claim.

[5] He further raised a discovery issue and claimed that the application of Section 101.106(f) violated the American with Disabilities Act.  Neither of those arguments are distinctly carried forward on appeal.

[6] The original trial judge was recused on the Hernandez' motion and Chief Administrative Judge Stephen Ables heard all the motions to dismiss.

6

## DISCUSSION

Hernandez raises six issues for our review. Five of those issues in one way or another involve the "borrowed servant" doctrine and we discuss them together. The gist of the argument is that Hernandez sued Dr. Kanlic as UMC's borrowed servant and it was thus error for the trial court to have dismissed UMC, and then treat Dr. Kanlic as TTUHSC's employee for the purpose of Dr. Kanlic's and then TTUHSC's motions to dismiss.

### Borrowed Servant

"Under the common-law doctrine of respondeat superior, or vicarious liability, 'liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them.'" *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018), *quoting St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540 (Tex. 2002)(plurality op.) (citation omitted). Courts apply these basic agency concepts to many kinds of agent-principal relationships, including those found in hospitals. *See Sparger v. Worley Hospital, Inc.,* 547 S.W.2d 582, 585 (Tex. 1977)(noting that "hospitals are subject to the principles of agency law which apply to others"). So, while a hospital is ordinarily not liable for the negligence of a physician who is an independent contractor, it might be vicariously liable for the medical malpractice of independent contractor physicians under agency law. *Baptist Memorial Hospital System v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998).

Hernandez's agency argument is built around the concept of a borrowed servant. Under that doctrine, the general employee of one employer may become the borrowed servant of another. *Sparger*, 547 S.W.2d at 583-84; Restatement (Second) of Agency § 227 (1958). The doctrine is triggered when one employer or its agents have the right to direct and control the employee of

another employer with respect to the details of the particular work at issue. *Wolff*, 94 S.W.3d at 537-38. The Texas Pattern Jury Charge would provide this direction to a jury:

> One who would otherwise be in the general employment of one employer is a 'borrowed employee' of another employer if such other employer or his agents have the right to direct and control the details of the particular work inquired about.

Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence, Intentional Personal Torts & Worker's Compensation*, PJC 10.2 (2018). If an employee of one employer becomes the borrowed employee of another, the employee is no longer considered an employee of the general employer for vicarious liability purposes. *Wolff*, 94 S.W.3d at 538.

"Physicians and surgeons are and should be subject to the usual rules applicable to borrowed servants." *Sparger*, 547 S.W.2d at 584. The issue has more often come up when a plaintiff claims that hospital staff are the borrowed servants of the doctor. *See e.g. id.*; *Ramon v. Mani*, 550 S.W.2d 270, 271 (Tex. 1977); *Dorsey v. Raval*, 480 S.W.3d 10, 19 (Tex.App.--Corpus Christi 2015, no pet.)(attempt to impute nurses conduct to neonatologist). That is, a plaintiff is attempting to impute the conduct of nurses or hospital staff to a physician defendant. But some plaintiffs have also attempted to impute a doctor's conduct to a hospital under the borrowed servant doctrine. *Wolff*, 94 S.W.3d at 539; *Powell v. Knipp*, 479 S.W.3d 394, 401 (Tex.App.--Dallas 2015, pet. denied)(holding that plaintiff must show that the borrowing employer controlled the doctor to the exclusion of the state university employer).

### Application

The central premise of Hernandez's argument is that the operative pleading--the Second Amended Petition--alleges that Dr. Kanlic was UMC's borrowed servant. Thus, Hernandez claims it was error to dismiss Dr. Kanlic under Section 101.106(f) because a suit could not have brought

against TTUHSC under the Texas Tort Claims Act (Issue One). If UMC controlled Dr. Kanlic's conduct as its borrowed employee, Hernandez also claims the wrong employer was substituted into the lawsuit (Issue Two). Hernandez further contends that the trial court erred in dismissing Dr. Kanlic, UMC, and TTUHSC because neither submitted evidence negating a borrowed servant allegation (Issue Three). If they did submit evidence, it was insufficient to conclusively prove the necessary jurisdictional facts (Issue Four). And finally, Section 101.106(f) would not apply if Dr. Kanlic was the borrowed servant of UMC and not an employee of TTUHSC (Issue Six).

We collectively reject these claims because we disagree that Hernandez ever pleaded that Dr. Kanlic was UMC's borrowed servant. Hernandez Second Amended Petition was the operative pleading when the trial court dismissed both UMC and Dr. Kanlic. That petition contains a "Facts" section that outlines the incident below. It alleges that Hernandez was a patient under the care of Defendant Dr. Kanlic, who performed pelvic surgery. The section specifically states:

> Plaintiffs state that the specific acts and omissions of the Defendant were the proximate cause of his injuries. However, even if the acts or omissions causing the harm cannot be proved, the instrumentalities and borrowed servants, i.e. nurses, hospital personnel, and other medical staff, may have been the cause of the Plaintiff's, Julio Hernandez, injuries because the Instrumentalities and borrowed servants were under the exclusive management and control of the Defendant at the time the injury occurred. Julio Hernandez was in an unconscious state when he was moved to the fracture table and underwent surgery by the borrowed servants of the Defendant, all of whom were under the Defendant's exclusive management and control. Julio Hernandez's own conduct in no way contributed to the injuries he sustained, and, but for the negligence of the Defendant or his borrowed servants, Julio Hernandez would not have sustained the grave injuries he currently faces.

Under any fair grammatical construction of the pleading, Dr. Kanlic is the "Defendant" referred to in the preceding section. Both in the factual recitation, and the specific liability allegations, the pleading uses the singular term "Defendant" which at multiple places specifically references only Dr. Kanlic.

9

When UMC complained that an earlier petition made no specific allegation against it, Hernandez added this single sentence to the Second Amended Petition:

> Additionally, and in the alternative, **EL PASO COUNTY HOSPITAL DISTRICT D/B/A UNIVERSITY MEDICAL CENTER** is vicariously liable and directly liable for the negligence of its employees who dropped the plaintiff or otherwise mishandled the plaintiff resulting in injury to his spinal column resulting in paralysis. [bolding original]

UMC was faulted for the conduct of its "employees" and not of its "borrowed servants." The pleading does not allege any facts which suggest that UMC had the right to direct and control the details of the any person's conduct in the surgical theater, much less Dr. Kanlic.

The pleading as a whole at best asserts that the nurses or technicians were the borrowed servants of Dr. Kanlic, and not that Dr. Kanlic was the borrowed servant of UMC.[7] As such, each of Hernandez's issues that are built on the false premise of a borrowed servant allegation against UMC fail.

We would reach the same result with regard to UMC on a simple application of our preservation rules. Hernandez alleges that the trial court abused its discretion in granting the dismissal orders. Hernandez, however, agreed to the dismissal order of UMC. While the written order was agreed as to form, the reporter's record supports that Hernandez told the court he was not opposed to the order. To preserve a complaint on appeal, the record must show that the

---

[7] At a hearing on a Motion for New Trial, Hernandez argued that an employer could not in fact control Dr. Kanlic's autonomy in making medical decisions:

> [Hernandez's Counsel]: One is that Dr. Kanlic is a professional doctor. And any profession under the State of Texas has autonomy in the types of decisions that are made, especially a doctor in treating a patient.

> This autonomy is not something that is subject to control by an employer. And so under Subsection F of 101.106, it says, If the case could have been brought against the employer governmental entity.

> And so because Dr. Kanlic's decisions in how to conduct surgery and how to exercise the standard of care for a medical professional, a doctor, that's not something that is within the power of an employee to control the details.

10

complaining party brought their complaint to the trial court's attention with sufficient specificity to make the trial court aware of the complaint and the grounds underlying that complaint. Tex.R.App.P. 33.1. Moreover, under the invited error doctrine, a party cannot request that the court make a specific ruling, and then complain of that ruling on appeal. *In re Department of Family & Protective Services*, 273 S.W.3d 637, 646 (Tex. 2009), *citing Tittizer v. Union Gas Corp.,* 171 S.W.3d 857, 862 (Tex. 2005)("[A] party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as 'the invited error' doctrine."). Hernandez never attacked the basis for dismissal of UMC under the expert report requirement of the TMLA. We would affirm the dismissal of UMC for that reason alone.[8]

We also address specifically some of Hernandez's sub-issues.

Hernandez also claims there was no evidence that supported Dr. Kanlic's status as an employee of TTUHSC. Section 101.106(f) can only be triggered by "an *employee* of a governmental unit based on conduct within the general scope of that employee's employment[.]" TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(f). [Emphasis added]. An "employee" is a defined term in the TTCA, and means

> a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

*Id.* at § 101.001(2). And Hernandez claims if there is no or insufficient proof that Dr. Kanlic was an employee of TTUHSC, he could not have invoked Section 101.106(f).

---

[8] The same reasoning, however, does not apply to Dr. Kanlic. While Hernandez had agreed to the order of dismissal as to Dr. Kanlic, Hernandez filed a motion for new trial which raised the borrowed servant argument in an attempt to have the trial court undo Dr. Kanlic's dismissal order. Nonetheless, we conclude that the trial court did not abuse its discretion in overruling the motion for new trial on that grounds asserted because the actual pleadings never alleged Dr. Kanlic was UMC's borrowed servant.

11

TTUHSC's human resources director averred that Dr. Kanlic was a faculty physician at the time of the surgery and his sole compensation came from TTUHSC. That affidavit satisfies the "in the paid service" element of the definition. Hernandez argues, however, that Dr. Kanlic's motion did not present any evidence of who had the legal right to control the details of his work. And certainly, were some legitimate question actually raised to the trial court about who had the right of control, it would have erred in granting the motion to dismiss. *See Marino v. Lenoir*, 526 S.W.3d 403, 405-06 (Tex. 2017)(concluding that record demonstrated that resident physician was not an employee of the U.T. System Medical Foundation for purposes of Section 101.106(f) based on review of contract documents governing the resident's relationship with that entity).

On this record, however, Hernandez's argument misses the mark. First, Hernandez agreed to the initial dismissal of Dr. Kanlic. The trial court can hardly be faulted for signing an agreed order when no issue was raised as to the proofs attached to Dr. Kanlic's motion to dismiss. The issue was only raised to the trial court in Hernandez's Motion for New Trial. But by that time, Hernandez had filed his Third Amended Petition that named TTUHSC as the defendant. And that pleading at several placed alleges that TTUHSC is liable for the actions of its "employee" Dr. Kanlic.[9] So by the time of the hearing on the Motion for New Trial--the only pleading that preserves the error claimed here--Hernandez had judicially admitted that Dr. Kanlic was TTUHSC's employee. *See University of Texas Health Science Center at Houston v. Rios*, 542 S.W.3d 530, 534 (Tex. 2017)(petition that alleged government unit acted "through" its doctors judicially admitted the doctors were its employees for purposes of Section 101.106); s*ee also*

_____

[9] Paragraph three of the Third Amended Petition states: Texas Tech is being substituted per CPRC 101.106 in that they are liable for the actions of their employees, include Enes Kanlic M.D.[.]" Paragraph ten, under the heading of "Liability of Defendant Texas Tech Health Science Center to Julio Hernandez" states "Defendant, by and though ITS employee, Enes M. Kanlic, M.D., provided medical care, advice, surgery and treatment to Julio Hernandez for pelvic surgery." [all caps original]. Paragraph eleven similarly states: "Plaintiffs allege that the Defendant, by and though their employee, Enes M. Kanlic, M.D., violated the duty of care he owed to Plaintiff, Julio Hernandez[.]"

*Houston First American Savings v. Musick,* 650 S.W.2d 764, 767 (Tex. 1983)("Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions."); *Gevinson v. Manhattan Construction Co.,* 449 S.W.2d 458, 466 (Tex. 1969)("The vital feature of a judicial admission is its conclusiveness on the party making it.  It not only relieves his adversary from making proof of the fact admitted but also bars the party himself from disputing it.").  Accordingly, by the time the trial court heard the new trial motion, it did not abuse its discretion denying that motion based on Hernandez's own pleaded allegations.

Hernandez also contends that Section 101.106(b) is in fatal conflict with Section 101.106(f).  As the argument goes, subsection (b) states that a suit against the employee forever bars suit against the employer, but subsection (f) then allows for adding the employer if the employee files a motion demonstrating that he or she was sued for actions in their official capacity.  The Texas Supreme Court, however, has explained how these provisions work in tandem.  *See Molina v. Alvarado*, 463 S.W.3d 867, 870 (Tex. 2015); *Texas Adjutant General's Office v. Ngakoue*, 408 S.W.3d 350, 356 (Tex. 2013).  While the TTCA waives immunity for specific claims, it conditions that waiver on the election-of-remedies provisions in Section 101.106.  *Molina*, 463 S.W.3d at 870.  That section "encourages, and in effect mandates, plaintiffs to pursue lawsuits against governmental units rather than their employees when the suit is based on the employee's conduct within the scope of employment."  *Ngakoue*, 408 S.W.3d at 350.  At the outset, the plaintiff must decide if they are suing the employee in their individual capacity, or the suing the governmental unit that the employee serves.  *Mission Consolidated Independent School District v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008)(election-of-remedies provision is intended to "force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit

13

is vicariously liable."). While suing one or the other locks in that election, Section 101.106(f) also provides that if the suit is "filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment" and "could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." TEX.CIV.PRAC.&REM.CODE ANN. § 101.106(f). Once the government employee triggers Section 101.106(f) by filing a motion to dismiss under that provision, the plaintiff must either "dispute that [the employee] acted in his official capacity" or "implicitly concede[ ] that he had sued [the employee] in his official capacity only." *Ngakoue*, 408 S.W.3d at 360.

Here, if Hernandez did not know whether Dr. Kanlic was liable individually or liable only as a government actor, the "prudent choice" would have been to sue Dr. Kanlic and await factual resolution of that question. *Molina*, 463 S.W.3d at 871. Hernandez did that, but when Dr. Kanlic filed his motion to dismiss, Hernandez effectively conceded there was no individual liability by adding TTUHSC. At that point, his claim had to lie against a governmental unit.[10] The problem for Hernandez is that if the liability was to fall on TTUHSC, it had never received a notice letter as required by Section 101.101(a), or there was no evidence offered that it had actual knowledge of the injury. And if liability were to somehow fall on UMC as Hernandez now alternatively

---

[10] As the court said in *Franka*:

> This construction of section 101.106(f) does, however, foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment. This changes, among other things, the rule in *Kassen v. Hatley,* [887 S.W.2d 4, 11 (Tex.1994)] which has allowed malpractice suits against physicians employed by the government, even though acting within the scope of employment. Recovery for the negligence of a government physician acting in the course of employment would be limited to that afforded under the Act.

332 S.W.3d at 381 (footnotes omitted, citation added).

14

claims, it was dismissed, without objection, because of a lack of an expert report. In either event, Hernandez is confronted by legislative hurdles that he cannot overcome on this record.

Hernandez's Issues One, Two, Three, Four, and Six are overruled.

## Open Courts

Hernandez's remaining issue claims that the trial court's application of Section 101.106(b) and (f) violates the Open Court's provision of the Texas Constitution. *See* Tex. Const. art. I, § 13 (providing in relevant part that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law"). The Open Courts provision "prohibits the Legislature from unreasonably abrogating well-established common-law claims." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 202 (Tex. 2002).

Regarding the application of Section 101.106(f), the Texas Supreme Court raised, but did not decide this issue in *Franka v. Velasquez*:

> We recognize that the Open Courts provision of the Texas Constitution 'prohibits the Legislature from unreasonably abrogating well-established common-law claims', but restrictions on government employee liability have always been part of the tradeoff for the Act's waiver of immunity, expanding the government's own liability for its employees' conduct, and thus 'a reasonable exercise of the police power in the interest of the general welfare.' In any event, no constitutional challenge is made in this case.

332 S.W.3d 367, 385 (Tex. 2011)(footnotes omitted). Several of our sister courts of appeals, however, have directly held that Section 101.106(f) does not violate the Open Courts provision of the Texas Constitution. *McFadden v. Olesky*, 517 S.W.3d 287, 298 (Tex.App.--Austin 2017, pet. denied); *City of Dallas v. Groden*, No. 05-15-00033-CV, 2016 WL 1367380, at *5 (Tex.App.--Dallas Apr. 6, 2016, pet. denied)(mem.op.); *Hamilton v. Pechacek*, No. 2-12-00383-CV, 2014 WL 1096018, at *6 (Tex.App.--Fort Worth Mar. 20, 2014, no pet.(mem. op.); *Williams v. Nealon*, 394 S.W.3d 9, 14 (Tex.App.--Houston [1st Dist.] 2012, pet. denied). Hernandez has not convinced us

otherwise. His concern that "the entire medical profession is now immune from suit" is simply untrue. Based on the situation here, for instance, a potentially viable claim might have proceeded if: (1) the claim involved the condition or use of tangible property (i.e. the sandbag); (2) the government defendant received a proper and timely formal notice of the claim (or otherwise had actual knowledge of the injury); and (3) Hernandez timely served a compliant expert report under the TMLA. The government employer, subject to the damage limitation restrictions of the TTCA, would then have to potentially respond in damages. We overrule Issue Five.

The orders of dismissal are affirmed.

August 14, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Chew, C.J. (Senior Judge)
Chew, C.J. (Senior Judge), sitting by assignment