COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| FAROOK W. TAHA, D. O., | § | No. 08-21-00227-CV |
| Appellant, | § | Appeal from the |
| v. | § | 448th Judicial District Court |
| STEPHANIE BLACKBURN, INDIVIDUALLY AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF THE ESTATE OF JOSE G. LAZALDE, DECEASED, | § | of El Paso County, Texas |
| | § | (TC# 2021DCV1282) |
| | § | |
| Appellee. | § | |

## O P I N I O N

This interlocutory appeal arises from a challenge to expert reports in a healthcare liability claim. Appellee Stephanie Blackburn sued Appellant Farook W. Taha, D.O. and other defendants for claimed negligence in medical care provided to Jose Lazalde, who died of complications from an intestinal blockage. As required by Chapter 74 of the Texas Civil Practice and Remedies Code, Blackburn served Dr. Taha with several expert witness reports supporting the claim. Dr. Taha moved to dismiss Blackburn's case against him, claiming the expert reports did not comply with the requirements of Chapter 74 of the Texas Civil Practices and Remedies Code.[1] The trial court denied the motion to dismiss, which Dr. Taha now appeals. For the following reasons, we affirm.

---

[1] TEX.CIV.PRAC.& REM.CODE ANN. § 74.351 (requirements for expert reports in health care liability cases).

# I. FACTUAL AND PROCEDURAL BACKGROUND

According to the expert reports in our record, on the evening of April 27, 2019, Lazalde presented to the emergency department of The Hospitals of Providence East Campus (THOP) complaining of abdominal pain that began the day before. Lazalde had a history of diverticulitis. Dr. Taha, the attending emergency physician at THOP when Lazalde arrived, ordered a CT scan of Lazalde's abdomen and pelvis. Dr. Taha reviewed the results of the CT scan, which were degraded by artifacts (distortion of the scan images) caused by Lazalde moving during the scan. Nonetheless, Mark Brown, M.D., the radiologist reviewing the images, concluded they were "suspicious for small bowel obstruction" (SBO) in the middle third of the small bowel. Dr. Taha then consulted surgeon Bruce J. Applebaum, M.D., who concluded that Lazalde's condition "[did] not sound like obstruction" but was gastritis that did not require surgical intervention. Approximately a half hour later, Dr. Applebaum told Dr. Taha that "if [there was] no vomiting or pain and if [Lazalde was] passing gas, he can be discharged and . . . [can] come back for any vomiting and fevers." Dr. Taha diagnosed Lazalde with gastritis, treated him with Zofran and morphine, provided him with educational materials for several conditions other than SBO, and discharged him soon after. Dr. Taha was not involved in any further diagnosis or treatment of Lazalde.

On April 29, 2019, Lazalde returned to THOP's emergency department with worsening abdominal pain. A second CT scan resulted in a diagnosis of SBO, and a general surgeon ordered the placement of a nasogastric (NG) tube. However, the THOP nursing staff failed to place the NG tube. Lazalde subsequently experienced an episode of emesis and aspiration, which ultimately led to respiratory arrest and his death on May 1, 2019. Lazalde's death certificate lists the cause of death as aspiration pneumonitis.

Blackburn, individually and on behalf of Lazalde's estate and wrongful-death beneficiaries sued Dr. Taha, Dr. Applebaum, Dr. Brown, and THOP for negligence arising out of their involvement in Lazalde's diagnosis and treatment. After Dr. Taha answered, and pursuant to Chapter 74, Blackburn timely served Dr. Taha with expert reports from Lisa Hoff, M.D., Todd D. Eisner, M.D., and Richard Bays, R.N.[2] Dr. Taha objected to these reports on several grounds, but the one relevant here is the contention that Dr. Hoff's report was insufficient to explain how any failure to meet the standard of care by Dr. Taha caused the injury sued on.

Following a hearing on Dr. Taha's motion to dismiss, the trial court denied the motion by written order. This appeal follows. *See* TEX.CIV.PRAC.& REM.CODE ANN. § 51.014 (permitting interlocutory appeals from the denial of a section 74.351 motion). In his sole issue, Dr. Taha argues that the trial court abused its discretion by denying his motion to dismiss because Blackburn's expert reports did not adequately explain how Dr. Taha's alleged breach of the standard of care caused Lazalde's death.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

We review a trial court's ruling on a motion to dismiss under Chapter 74 for an abuse of discretion. *Abshire v. Christus Health S.E. Texas*, 563 S.W.3d 219, 223 (Tex. 2018); *Golucke v. Lopez*, No. 08-21-00030-CV, 2022 WL 4595003, at *3 (Tex.App.--El Paso Sept. 30, 2022, no pet.h.). A trial court has no discretion in determining what the law is or in applying the law to the

---

[2] Although there is some overlap between these reports over the actions of the involved parties, Dr. Hoff's report primarily concerns Dr. Taha, Dr. Eisner's report primarily concerns Dr. Appelbaum, and Bays' report primarily concerns the THOP nursing staff. Blackburn later amended her petition to add another physician defendant and served an additional expert report from Lennard A. Nadalo, M.D., who primarily addressed Dr. Brown's actions. Dr. Taha additionally objected to Dr. Nadalo's report contending that he lacked qualifications and failed to identify the standard of care.

facts, and it abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

The Texas Medical Liability Act, found at Chapter 74 of the Civil Practice and Remedies Code, requires health care liability claimants to serve an expert report upon each defendant against whom a liability claim is asserted. TEX.CIV.PRAC.& REM.CODE ANN. § 74.351(a) (requiring such report to be filed not later than 120 days from the filing of the defendant's answer). If a plaintiff timely furnishes an expert report, a defendant provider may file a motion challenging the report's adequacy. *Id.* A report is adequate if it represents "an objective good faith effort to comply with the definition of an expert report . . . ." *Id.* § 74.351(*l*). That definition requires an expert report to provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). "A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*).

To meet the standard for a good-faith effort, a proffered report must provide information on the three statutory elements — standard of care, breach, and causation. *Golucke*, 2022 WL 4595003, at *3, *citing Am. Transitional Care Ctrs. of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). Doing so meets two important purposes of the Act. First, the report must inform the defendant of the specific conduct the plaintiff questions. *Id.* Second, the report must provide a basis for the trial judge to determine whether the plaintiff's claims have merit. *Id.* Although the report need not marshal all the plaintiff's proof, if the report does not meet these two purposes and

4

omits any of the statutory requirements, it does not constitute a good-faith effort. *Id.* Thus, a report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill its two purposes. *Id.* Rather, to constitute a good-faith effort, a report must explain the basis of the expert's statements and link his or her conclusions to the facts of the case. *Id*. In determining whether the report constitutes a good-faith effort, the trial court is limited to the information contained within the four corners of the report and may not draw inferences to supply absent but necessary information. *Id.*

**B. Dr. Hoff's Report**

Dr. Taha argues that Dr. Hoff's report does not comply with section 74.351 because it does not represent a good-faith effort to adequately explain the causal link between Dr. Taha's actions and Lazalde's death. Dr. Taha contends the report essentially amounts to "no report" at all.

An expert's report must explain the basis of the expert's statements on causation and link the expert's conclusions to the facts. *Wright*, 79 S.W.3d at 52. "'A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission, the harm would not have occurred.'" *Golucke*, 2022 WL 4595003, at *8, *quoting Tenet Hosps., Ltd. v. De La Riva*, 351 S.W.3d 398, 404 (Tex.App.--El Paso 2011, no pet.). For causation, a court should consider two factors: (1) whether the expert established a logical, complete chain between a negligent act and the plaintiff's injury; and (2) whether the report gave the trial court sufficient medical details to allow the court to decide whether the case was frivolous. *Id.*, *citing Mendez-Martinez v. Carmona*, 510 S.W.3d 600, 607 (Tex.App.--El Paso 2016, no pet.). Causation cannot be inferred but must be clearly stated. *Id.* An expert cannot simply conclude that the breach caused the injury without giving a court any reasonable basis for

concluding that the lawsuit has merit, and the report must tie the expert's conclusion to the facts. *Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010).

Dr. Hoff stated in her report that she is a board-certified emergency physician who is familiar with the applicable standard of care for the diagnosis and care of SBO. Dr. Hoff claimed familiarity with the risk of aspiration pneumonitis from emesis and its prevention with nasogastric decompression. In forming her opinions, Dr. Hoff reviewed Lazalde's medical records from THOP and his death certificate. Based on the first abdominal and pelvic CT scan, which "indicate[d] suspicion for SBO," Dr. Hoff concluded that Lazalde had an SBO when he first presented to the emergency department on April 27, 2019, and that his condition continued after he was discharged. Although Lazalde's symptoms abated when he was treated with morphine and Zofran at the ER, she contends this does not mean that Lazalde's SBO was resolved or that the findings on the CT scan were disproved.

Dr. Hoff stated that the standard of care applicable to Dr. Taha "included but was not limited to diagnosing SBO, admission, and consultation with a surgeon." Dr. Hoff stated that Dr. Taha "breached the standard of care by failing to diagnose [SBO] and by discharging the patient without the benefit of hospital admission for further evaluation and treatment." "Had [Lazalde] been admitted, the standard of care included monitoring and treatment with abdominal decompression and bowel rest by a[n NG] tube." "Nasogastric decompression improves patient comfort, minimizes or prevents recurrent vomiting, and serves as a means to monitor the progress or resolution of these conditions." Dr. Hoff stated that in this case, "a material deterioration of the patient's condition is likely to result from discharge." Because of the breach of the standard of care, Lazalde's diagnosis and treatment of his SBO was delayed, resulting in worsening symptoms and increased risk of death from aspiration pneumonitis caused by emesis. Dr. Hoff concluded,

6

based on a reasonable medical probability, that if Dr. Taha had followed the standard of care and properly diagnosed Lazalde with SBO and provided nasogastric decompression when Lazalde first presented to the emergency room, Lazalde's aspiration of emesis, respiratory arrest, and death several days later would have been prevented.

Thus, according to Dr. Hoff's report, the primary link between Dr. Taha's actions and Lazalde's injuries was Dr. Taha's alleged failure to timely diagnose and treat Lazalde's SBO with an NG tube when he first presented to the hospital on April 27 (or at least to admit Lazalde so that his condition could be monitored). The report concludes that these failures led to a "delay in diagnosis and treatment of SBO," which carried the increased risk of worsening symptoms and increased risk of aspiration pneumonitis caused by emesis.

Because causation is the only element of Dr. Hoff's report that is challenged, we must assume that the report adequately alleges a breach of the applicable standard of care. The alleged breach includes the failure to diagnose SBO and to then treat it with nasogastric decompression that "minimizes or prevents recurrent vomiting[.]" In turn, Dr. Hoff (and the other expert reports) claim that when Lazalede later vomited, he aspirated the emesis, suffered respiratory arrest, and died. We find that the report contains sufficient information to proffer a causal link between Dr. Taha's actions and Lazalde's injuries. The report fulfills the twin purposes of section 74.351 because it contains enough information to inform Dr. Taha of the specific conduct questioned and provides a sufficient basis for the trial court to conclude that Blackburn's claims have merit. *See Golucke*, 2022 WL 4595003, at *3. Thus, the trial court did not abuse its discretion by denying Dr. Taha's objections and motion to dismiss on this basis. *See Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 514-15 (Tex. 2017) (per curiam) (expert report stating that a doctor's failure to timely remove a foreign body from a patient's body "can" be deadly, and when

7

read in context with the rest of the report, adequately explained how the breach of the standard of care caused the patient's death); *Rittger v. Danos*, 332 S.W.3d 550, 557-58 (Tex.App.--Houston [1st Dist.] 2009, no pet.) (expert report sufficiently established causation where it linked a doctor's failure to promptly diagnose and admit the plaintiff to a delay in treatment that caused the plaintiff's injuries); *Hoffman v. Samples*, No. 10-17-00196-CV, 2017 WL 4413437, at *7 (Tex.App.--Waco Oct. 4, 2017, no pet.) (mem. op.) (expert report satisfied section 74.351's good-faith requirement on causation where the report adequately explained the link between a doctor's breach of the standard of care, which resulted in a delay in the patient's diagnosis, to the patient's eventual injuries).[3]

We address two arguments that Dr. Taha raises. First, he argues that Dr. Hoff's report does not represent a good-faith effort to establish causation because it does not explain how his alleged breach of the standard of care was a "substantial factor" in causing Lazalde's death. *See Golucke*, 2022 WL 4595003, at *8 (a causal relationship is established by proof that the negligent act or omission was a "substantial factor" in bringing about the harm). Although the phrase "substantial factor" does not appear in Dr. Hoff's report, the Texas Supreme Court has stated that there are no "magical words" that need to be stated to comply with the good-faith requirement. *Jelinek*, 328 S.W.3d at 540. Rather, the report must only "explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Id*. at 539-40. And for the above reasons, we conclude that Dr. Hoff's report sufficiently explained how Dr. Taha's actions could be a substantial factor in causing Lazalde's death.

---

[3] Because Hoff's report alone satisfies the good-faith requirement to establish causation, we need not discuss whether the other expert reports also satisfy that requirement.

Finally, Dr. Taha contends that this case mirrors *Clapp v. Perez*, where this Court found an expert report conclusory on the causation issue. 394 S.W.3d 254, 261-62 (Tex.App.--El Paso 2012, no pet.). There, the expert stated that the patient died because the two doctors—an anesthesiologist and surgeon — failed to insert an NG tube before surgery. The report claimed "[p]lacing a[n NG] tube prior to the emergency surgery would have emptied the stomach . . . of its contents and prevented the aspiration that did eventually occur and led to aspiration pneumonia, prolonged intubation with ARDS, multi-organ failure and then death of [the patient.]" *Id*. at 261. We found the report deficient, first because it failed to distinguish which of the two doctors owed the standard of care or breached it. *Id*. at 262. We also found the report's causation opinion conclusory because the expert:

> [S]imply expressed his conclusion without stating the underlying facts necessary to establish that the failure to place a[n NG] tube was a substantial factor in causing [the patient's] death, and that absent this failure, [the patient] would not have died. In other words, [the expert] fail[ed] to explain the basis of his statements linking his conclusions to the facts.

*Id*. But this case is distinguishable because Dr. Hoff did more to explain the chain of events leading to Lazalde's death. Her report also explained that the specific treatment (nasogastric decompression) and monitoring Lazalde would have received had he been timely diagnosed and admitted to the hospital would have prevented vomiting. She concluded that the lack of that treatment and monitoring led to the symptoms of emesis, respiratory arrest, and aspiration pneumonitis that caused Lazalde's death. Thus, Dr. Taha's reliance on *Clapp* is misplaced.

Dr. Taha's Issue One is overruled.

### III.  CONCLUSION

The trial court's order denying Dr. Taha's objections and motion to dismiss is affirmed.

9

JEFF ALLEY, Justice

November 8, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.